**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernard Higgins, | No. CV-17-00582-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| XL Insurance America Incorporated, | |
| Defendant. | |

On November 18, 2016, Plaintiff Bernard Higgins ("Plaintiff") filed a complaint against Defendant XL Insurance America Inc. ("Defendant") alleging a breach of the implied duty of good faith and fair dealing ("bad faith") for wrongful denial of his workers' compensation claim in Arizona state court. (Doc. 1-1). Defendant removed the case to federal court on February 27, 2017. (Doc. 1). Now pending before the Court is Defendant's Motion for Summary Judgment (Doc. 34). Plaintiff has filed a Response (Doc. 37) and Defendant has filed a Reply (Doc. 41).[1] Because the Court finds it lacks jurisdiction to hear Plaintiff's bad faith claim, Defendant's Motion will be granted.

**I.   Background**

Unless otherwise noted, the following material facts are not in dispute. Some facts are drawn directly from the Administrative Record of Plaintiff's worker's compensation claim, portions of which both parties attach to their separate statements of fact, and to

---

[1] Defendant has requested oral argument as to this Motion. The Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f)(same).

which this Court takes judicial notice.

Plaintiff was driving a tractor trailer on September 10, 2014, when a similar truck going the opposite direction side-swiped his vehicle, smashing Plaintiff's driver side mirror. At the time, Plaintiff was an employee of Autozone. Plaintiff suffered no loss of consciousness from the accident. He was treated at Wickenburg Community Hospital for corneal abrasion and superficial wounds from pieces of glass; he did not require stitches or antibiotics as a result of his injuries. Plaintiff filed a worker's compensation claim with Autozone later that day by phone. Plaintiff's claim was accepted by Defendant, and benefits were timely initiated and paid in accordance with the Arizona Workers' Compensation Act ("AWCA"). Plaintiff was subsequently treated by U.S. Healthworks and released from care.

At Defendant's request, on November 14, 2014, Plaintiff underwent an Independent Medical Exam ("IME") with Dr. Atul Patel ("Dr. Patel") and Dr. Leo Kahn ("Dr. Kahn"). The doctors concluded that the physical and neurological examinations of Plaintiff did "not demonstrate any objective abnormalities" and that from a physical and neurological perspective, they advised that Plaintiff could "return to full-time regular duty work without restriction." The doctors believed, however, that "there may be a significant underlying psychological component to [Plaintiff's] overall clinical course and presentation today." They stated that, "[w]hether or not his current psychological status is related to the September 10, 2014 industrial injury is out of the scope of these examiners and should be addressed formally by a neuropsychologist." They concluded that they did "not believe that [Plaintiff] should be allowed to return to work driving a tractor trailer until he has undergone neuropsychological evaluation." Prior to the IME, Plaintiff had not made a claim for a neuropsychological component of his claim, nor had he sought medical care for a neuropsychological condition or requested help in obtaining an appointment.

Thereafter, Defendant Filed a Notice of Claim Status on December 22, 2014 ("NOC Status") effectively closing the claim due to no permanent disability. (Plaintiff's

Controverting Statement of Facts and Additional Facts Deemed Material ("PCSOF"), Doc. 38-3). That NOC Status stated, among other things, that (1) Plaintiff had been released to work on November 19, 2014; (2) Plaintiff's temporary compensation changed and active medical treatment had been terminated on November 23, 2014 because Plaintiff had been discharged; and (3) Plaintiff's injury had resulted in no permanent disability. (*Id*.) The NOC Status gave Plaintiff ninety (90) days to request a hearing with the Industrial Commission of Arizona ("ICA") disputing the NOC Status. (*Id*.) The NOC Status advised that "IF NO SUCH APPLICATION IS RECEIVED WITHIN THAT NINETY DAY PERIOD, THIS NOTICE IS FINAL." (*Id*.) Plaintiff did not file a request for a hearing within the stated time period. (*Id*.)

Over a year later, on December 29, 2015, Plaintiff filed a Request for Hearing with the ICA under A.R.S. § 23-1061(J) ("'J' Request"). (PCSOF, Doc. 38-4). Therein, Plaintiff sought to reopen the September 10, 2014 claim, and alleged that Defendant had failed to pay outstanding compensation benefits and medical bills, and failed to authorize neuropsychological testing and/or treatment. (*Id*.) On January 8, 2016, Defendant responded to the "J" Request informing the ALJ that it had placed Plaintiff's outstanding medical bill in line for payment. (PCSOF, Doc. 38-5). It also stated that Plaintiff's September 14, 2014 NOC Status had "long since gone final" and that "[i]f he believes he requires further treatment and/or evaluation for reasons attributable to his September 10, 2014 claim, then we believe his remedy is to file a petition to reopen." (*Id*.) On January 11, 2016, Chief Administrative Law Judge ("ALJ") Mosesso sent Plaintiff a letter explaining to Plaintiff that the reopening process is different from a request under A.R.S. § 23-1061(J). (PCSOF, Doc. 38-6). She accordingly attached a reopen form to his letter and instructed Plaintiff to contact the Ombudsman's Office. (*Id*.) The ALJ also sought a response from Plaintiff regarding Defendant's letter about his outstanding medical bills. (*Id*.) In that regard, she asked Plaintiff to inform the Court within ten (10) business days as to whether Defendant's letter resolved the issues raised in his "J" Request, and if he did not, the "J" Request would be "deemed resolved." (*Id*.) Plaintiff did not respond to

ALJ Mosesso's inquiry. (PCSOF, Doc. 38-7). On February 2, 2016, ALJ Mosesso issued an award that stated: "On December 29, 2015, Applicant filed an A.R.S. § 23-1061(J) request for investigation into the failure of the defendant carrier to pay outstanding compensation benefits owed, to pay outstanding medical bills, and to authorize neuropsychological testing and/or treatment…Applicant has not responded to the undersigned inquiry from January 11, 2016. Therefore, this matter is deemed resolved. IT IS ORDERED that no further action be taken on applicant's A.R.S. § 23-1061(J) request. (*Id.*)

On February 16, 2016, Plaintiff filed a second Request for Hearing with the ICA again protesting the December 22, 2014 NOC Status. (DSOF, Doc. 40-1, Ex. H; PSAF ¶ 84). Therein, Plaintiff claimed he was entitled to continuing benefits and because "[t]he carrier's notice of claim status is not supported by medical evidence and is void or voidable" under *Roseberry v. Indus. Comm'n*, 546 P.2d 802 (Ariz. 1976). (PSCOF, Doc. 38-8).

On June 10, 2016, ALJ Radke sent the parties an interim letter[2] in which she indicated that Plaintiff had demonstrated the NOC Status was void pursuant to *Roseberry*, thus giving the IAC jurisdiction to hear Plaintiff's claim. (PSCOF, Doc. 38-11). The ALJ indicated she would thus set a notice of hearing on Plaintiff's claim. (*Id.*)

On August 29, 2016, however, ALJ Radke issued a formal order that ultimately dismissed Plaintiff's February 16, 2016 request for continuing benefits for lack of jurisdiction. (PCSOF, Doc. 38-13). ALJ Radke found that Plaintiff's claim for continuing benefits was barred by "res judicata in light of Chief Judge Mosesso's February 2, 2016 Award." (*Id.*) The ALJ found that although she "would have found [Plaintiff's] *Roseberry* argument persuasive, finding that the IME could not provide a viable basis for the Notice of Claim Status releasing [Plaintiff] to regular work," Plaintiff's continuing benefits claim, which included claims with "respect to

---

[2] Plaintiff characterizes this letter as an "order" that contains "administrative finding[s]". (Doc. 37 at 9). The Court disagrees with this characterization, but notes that even if it could be characterized as such, the ALJ plainly reconsidered her "findings" in the two subsequent formal orders issued on August 29, 2016 and September 27, 2016.

- 4 -

compensation benefits and further treatment" was precluded because Plaintiff "failed to file a Request for Review of the [February 2, 2016] Award deeming the case resolved. The [February 2, 2016] Award therefore became final." (*Id.*) The ALJ thus found that the relief requested in Plaintiff's February 16, 2016 "J" request, including the request for psychological testing and treatment, was untimely and could not be excused under *Roseberry*. (*Id.*) Plaintiff appealed ALJ Radke's August 29, 2016 decision by filing a Request for Review on September 7, 2016. (DSOF, Doc. 40-1, Ex. L). That decision was affirmed on September 27, 2016. (*Id.*)

Plaintiff also filed a Petition to Reopen the NOC Status on April 1, 2016, in which he asked the ICA to "consolidate [the Petition to Reopen] with 2/16/16 request for hearing." (Defendant's Statement of Facts in Support of its Motion for Summary Judgment ("DSOF") Doc. 40-1, Ex. I). Defendant denied Plaintiff's Petition to Reopen the NOC on April 22, 2016. (DSOF, Doc. 40-1, Ex. L). The Court scheduled a hearing on the Petition to Reopen for November 7, 2016, but prior to that time, the parties informed the court that the case had been settled. (DSOF, Doc. 40-1, Ex. M). Through representation, on October 19, 2016, the parties filed a Petition for Approval of Compromise and Settlement Agreement (the "Agreement").[3] (*Id.*) The Agreement was

---

[3] In his Response, Plaintiff objects to the Court's consideration of the ICA Settlement in deciding Defendant's motion, arguing that it is not relevant under Fed. R. Evid. 408(a). Plaintiff contends that Defendant only seeks to use the ICA Settlement Agreement to "limit the Plaintiff's case by arguing that his claim is invalid based on the settlement." (Doc. 37 at 16). Defendant offers no specific rebuttal to this argument in its Reply.

Rule 408 provides in relevant part that evidence of compromise and offers is not admissible to prove liability for or invalidity of the claim or its amount. *See* Fed. R. Evid. 408(a). The 1972 advisory committee's notes to those proposed rules state that "[w]hile the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto." Evidence of a settlement agreement otherwise precluded by Rule 408, however, may be offered for a purpose *other* than to prove or disprove liability or the validity of a claim or its amount. *See e.g.*, *Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992) (finding consent judgment was admissible to prove motive or intent). Although the Court finds it conceivable that Defendant is using the parties' Settlement Agreement and subsequent consent decree to establish that this Court lacks jurisdiction over the claim, and not to prove that Plaintiff's claim is invalid, Defendant did not argue as much, and this Court will not make such a presumption on its behalf. The Court thus grants Plaintiff's request to strike the ICA Settlement documents, and references them here only for purposes of background.

approved by ALJ Radke on October 24, 2016. (*Id.*)

## II. Summary Judgment Standards

Summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Notwithstanding the summary judgment standards, the court must dismiss a case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Indeed, "[a] federal court is presumed to lack jurisdiction…unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). When that jurisdiction is challenged, "the plaintiff bears the burden of establishing the court's subject matter jurisdiction." *Soghomonian v. United States*, 82 F. Supp. 2d 1134, 1140 (E.D. Cal. 1999).

## III. Discussion

Plaintiff claims that Defendant, as Plaintiff's workers compensation insurer, breached its duty of good faith and fair dealing by refusing to properly evaluate and thus effectively denying Plaintiff's September 14, 2014 benefit claim without any reasonable basis. Arizona law allows a workers compensation claimant to bring an action against his employer's workers compensation insurer for breach of the duty of good faith and fair dealing, i.e., a "bad faith" claim. *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1004 (D. Ariz. 2013) (citing *Mendoza v. McDonald's Corp.*, 213 P.3d 288, 298 (Ariz. Ct. App. 2009)). "The duty of good faith arises because…implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Id.*

Because the duty of good faith is non-delegable, Defendant may be liable for the insurer's actions. *See Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1166 (D. Ariz. 2014).

A claim for bad faith "arises when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). Although the IAC has exclusive jurisdiction over workers' compensation claims in Arizona, *see* Ariz. Const. art. 18, § 8; A.R.S. §§ 23–901 *et seq.* – a workers' compensation carrier can nonetheless be liable for the common law tort of bad faith in a district court because such a tort is "separate and not a direct or natural consequence of the compensable industrial injury." *Merkins v. Fed. Ins. Co.*, 349 P.3d 1111, 1113 (Ariz. Ct. App. 2015) (citing *Franks v. U.S. Fidelity & Guaranty Co.,* 718 P.2d 193 (Ariz. Ct. App. 1985), *Boy v. Fremont Indem. Co.,* 742 P.2d 835, 839 (Ariz. Ct. App. 1987) and *Mendoza v. McDonald's Corp.,* 213 P.3d 288, 298 (Ariz. Ct. App. 2009).

However, to bring a claim of bad faith denial of benefits against a carrier, an aggrieved claimant must first obtain a "compensability determination from the [IAC]." *Id*. at 1115. In *Merkins*, the court explained the basis for such a requirement is to ensure that the IAC's exclusive jurisdiction to determine entitlement to benefits and the amount of benefits is not being circumvented. *Id*. There, the claimant filed a claim for bad faith denial of benefits with the superior court instead of seeking review of the carrier's decision to file a notice of claim status terminating her claim. *Id*. The Court held that the superior court lacked jurisdiction to hear the Plaintiff's bad faith claim because the Plaintiff had failed to exhaust her administrative remedies. *Id*. In so finding, the Court stated:

> Even if we assume the evidence would show that [the carrier] (through its employees) acted in bad faith by denying [plaintiff's] claim, the finder of fact would have to make a compensability determination to find that [the carrier] unreasonably terminated [plaintiff's] benefits. [] Moreover, without a compensability determination, the finder of fact could not award as damages any unpaid policy benefits due from the industrial injury because

> only the Industrial Commission can determine whether benefits are due and order payment. [] As a result, to allow a plaintiff to seek damages based on a denial of benefits from the carrier without pursuing benefits through the workers' compensation system would be akin to ordering that the benefits be paid for, thereby circumventing the Industrial Commission's exclusive jurisdiction to decide the issue.

*Id.*

Relying on *Merkens*, Defendant argues that the Court lacks jurisdiction to decide the compensability issue Plaintiff has alleged because he did not exhaust his administrative remedies on this issue with the ICA. Specifically, Defendant argues, "Plaintiff did not secure any ruling from ICA awarding any additional workers' compensation benefits that were not previously paid." (Doc. 34 at 10). The Court agrees, and finds the language from *Merkins* forecloses its authority to hear Plaintiff's bad faith denial of benefits claim.

Here, Plaintiff's December 28, 2015 "J" Request specifically sought continuing benefits based on the conduct underlying Plaintiff's bad faith claim, i.e., Defendant's failure to authorize neuropsychological testing and/or treatment prior to closing his claim on December 22, 2015. (PCSOF, Doc. 38-4). Plaintiff's "J" Request stated in part, "To date, I have not received any neuropsychological appointments or compensation to continue my recovery…I am requesting that the workman's compensation case be reopened and re-evaluated to showcase that there is still more treatment necessary for my recovery…" (*Id.*) By the clear language of Plaintiff's Request for Hearing, the Court finds the question of continuing benefits in the form of neuropsychological testing and/or treatment was placed in issue by the Plaintiff. *Stephens v. Industrial Comm'n*, 559 P.2d 212, 214 (Ariz. Ct. App. 1977). When Defendant represented that payment was forthcoming for Plaintiff's outstanding medical bills (which were also requested in that "J" Request), the ALJ asked Plaintiff to respond within ten days as to whether Defendant's response adequately resolved all the concerns in his "J" Request. (PCSOF, Doc. 38-6). Plaintiff did not respond to the ALJ's request. As he had told Plaintiff he would if no request was received, the ALJ thus "deemed [the matter] resolved" and

ordered that no further action be taken on any of the matters in Plaintiff's "J" request. (*Id.*) Plaintiff did not seek review of this order. *See* A.R.S. § 23-946 (providing that any party dissatisfied with an ICA decision can appeal that decision to superior court within thirty days). Plaintiff's claim to entitlement of additional neuropsychological testing and/or treatment pursuant to Defendant's September 2014's acceptance of the original claim therefore became final and adverse to Plaintiff on February 16, 2016.

The Court finds this conclusion is underscored by ALJ Radke's subsequent August 29, 2016 decision finding that the court lacked jurisdiction to hear Plaintiff's request for continuing benefit coverage for neuropsychological testing and/or treatment due to the res judicata effect of ALJ Moresso's prior order on that issue (DSCOF, Doc. 38-13). And because the parties ultimately settled before Plaintiff's Petition to Reopen went to hearing, there was of course no determination by the ICA there.

Plaintiff had an opportunity to seek review of ALJ Moresso's February 2, 2015 adverse award regarding Plaintiff's entitlement to neuropsychological testing and/or treatment. He did not. Thus, there is no favorable determination from the IAC entitling Plaintiff to continuing benefits in relation to neuropsychological testing and/or treatment. A finder of fact here would have to make a compensability determination prior to awarding any damages, a duty that is within the exclusive jurisdiction of the IAC. *Merkins*, 349 P.3d at 1113. Thus, allowing Plaintiff's bad faith denial claim, which undisputedly seeking damages stemming from Plaintiff's failure to provide benefits covering neuropsychological testing and/or treatment, would be "circumventing the Industrial Commission's exclusive jurisdiction to decide" whether Plaintiff was ever entitled to those benefits. *Id*.

The damages alleged from Plaintiff's bad faith denial claim all stem from Defendant's alleged failure to authorize neuropsychological testing and/or treatment. But Plaintiff never sought review of the ALJ Award that adversely resolved the issue of Plaintiff's entitlement to these continuing benefits. As such, under *Merkins*, this Court lacks jurisdiction over Plaintiff's bad faith claim.

Accordingly,

**IT IS ORDERED granting** Defendant's Motion for Summary Judgment (Doc. 34).

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment accordingly.

Dated this 30th day of September, 2018.

Honorable Diane J. Humetewa
United States District Judge